A03A2243. OSTERHOUT v. THE STATE.
(596 SE2d 766)

BARNES, Judge.

Jason Osterhout was indicted for kidnapping with bodily injury, rape, six counts of aggravated assault, possession of a firearm during

---

[28] OCGA § 14-3-1430 (2) (A).

the commission of a crime, and possession of a knife during the commission of a crime. Following a jury trial, he was convicted on all counts, except the jury found him guilty of the lesser included offenses of false imprisonment on the kidnapping charge and of simple assault on one of the aggravated assault counts, and the trial court directed a verdict of acquittal on another count of aggravated assault. He was sentenced to a total of thirty-five years on the various convictions, twenty-five years confinement, the remaining ten years on probation. Following the denial of his motion for new trial, Osterhout appeals, contending that OCGA § 24-2-3, the Rape Shield Statute, was misapplied throughout the case, that the trial court did not provide the parties with an opportunity to present additional arguments after it gave the jury a charge different from the one agreed to in the charge conference, that the trial court improperly expressed its opinion about the case, and that trial counsel was ineffective. Upon review, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict. *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998). So construed, the evidence demonstrates that on the night before the incident at issue, Osterhout's wife told him that she wanted a divorce. The following morning, October 24, 2001, she was awakened when Osterhout climbed onto the bed, straddled her, and handcuffed her hands together. She screamed for him to stop, but he also tied her feet to the bed with a rope. Osterhout told his wife that she would make things harder by struggling, but she continued to fight him. After he finished tying his wife to the bed, Osterhout held a "black handled butcher knife" to his wife and had sexual intercourse with her. The knife caused several superficial cuts to her neck. Afterward, Osterhout picked up a .22 rifle and threatened to kill her; he then pointed the gun at himself and said that he would make her watch him die. He told her that if he could not have her, no one would and that if she left, he would give her something to remember him by.

Osterhout put the gun down, but picked up the knife again and struck his wife with the knife handle several times. He turned away and started punching the bedroom wall with the knife. When he was facing the wall, his wife managed to escape from the ropes around her feet and ran out of the house. Osterhout did not attempt to stop her. Osterhout's wife ran to a nearby neighbor's house and called 911. When the police responded, Osterhout refused to come out of his home. The police were able to talk with him via a fire band radio in Osterhout's home. Osterhout talked with one of the officers through an opened back window, and said that he was going to kill himself. The officer observed Osterhout drinking what appeared to be rubbing alcohol and beer, and taking ibuprofen and cold pills. Osterhout gave the officer a suicide note. After Osterhout threatened to cut his throat,

and put the gun barrel in his mouth, the police used a concussion grenade to gain entry, and then arrested Osterhout.

1. Osterhout argues that the trial court improperly excluded evidence under the Rape Shield Statute, OCGA § 24-2-3, because the statute only applies to the rape counts of the indictment, not the aggravated assault counts.

"We review the trial court's exclusion of evidence under the Rape Shield Statute for abuse of discretion." *Jackson v. State*, 254 Ga. App. 562, 565 (2) (562 SE2d 847) (2002). The Rape Shield Statute bars the admission of evidence relating to the victim's past sexual behavior unless it directly involves the accused's participation and supports an inference that the accused could have reasonably believed that the victim consented to the conduct at issue. *Griffin v. State*, 224 Ga. App. 225, 227-228 (2) (480 SE2d 608) (1997). Inadmissible past sexual behavior includes "evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, [and] sexual mores contrary to the community standards." OCGA § 24-2-3 (a). Evidence of the past sexual behavior of a victim is generally inadmissible either on direct or cross-examination of the complaining witness. Id.

Here, although he argues otherwise, the Rape Shield Statute was applicable because Osterhout was being prosecuted for aggravated assault in conjunction with a rape charge. *McBride v. State*, 247 Ga. App. 767, 771 (2) (545 SE2d 332) (2001) (statute applies to prosecutions for aggravated assault with attempt to rape); see also *Blount v. State*, 172 Ga. App. 120, 121 (1) (322 SE2d 323) (1984). We can find no authority, nor does Osterhout present any, for the proposition that the rape shield law does not apply to related aggravated assault counts in a rape case.

All of the charges against Osterhout arose out of the attack upon his wife and "because there is evidence of rape in this case in that the [wife] testified that [Osterhout] forced himself on her against her will, the reasons why evidence of prior sexual [behavior] is not permitted by OCGA § 24-2-3 [are] equally applicable in this case." (Citations and punctuation omitted.) *Blount v. State*, supra, 172 Ga. App. at 121 (1).

2. Osterhout next argues that the trial court erred because it gave a charge different from the agreed upon charge and the parties were not given an opportunity to reargue the facts in light of the new charge.

OCGA § 5-5-24 (b) provides:

> In all cases, at the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may present to the court written requests that it instruct the

jury on the law as set forth therein. Copies of requests shall be given to opposing counsel for their consideration prior to the charge of the court. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury but shall instruct the jury after the arguments are completed. The trial judge shall file with the clerk all requests submitted to him, whether given in charge or not.

During the charge conference, Osterhout requested a charge on simple assault, "in case the jury finds he didn't use the weapon offensively." The trial court denied the request, reasoning that "[h]e either did it or he didn't do it and I just don't think [it's] simple assault." After closing arguments the trial court informed counsel that it would give a charge on simple assault as a lesser included offense of aggravated assault. It then asked for any objections, and neither attorney objected.

> The requirement that the judge inform the parties prior to final argument of his action on the requested charges is designed to enable the attorneys to argue their case to the jury intelligently and on the basis of the guiding legal principles under which the argument should be made. It follows that where the trial judge misleads counsel as to the intended charge, a severe injustice may result and counsel should be given the opportunity, if justice requires, to reargue the facts in the light of the changed law of the case. . . . Where the court, in its charge, includes matter contained in a rejected request, the party or parties affected thereby should . . . call the attention of the court to the specific matter and request the right to argue that particular matter to the jury. Such a solution will afford opportunity to obviate granting new trials or making errors which *may* be prejudicial.

(Citations and punctuation omitted.) *Daniels v. State,* 137 Ga. App. 371, 374-375 (4) (224 SE2d 60) (1976).

Osterhout, however, did not bring the matter to the court's attention nor did he ask to reargue in light of the unexpectedly included charge. Accordingly, we find no harmful error with the trial court's inclusion of the simple assault charge. *Roberts v. State,* 223 Ga. App. 167, 169 (4) (477 SE2d 345) (1996).

3. Osterhout asserts that the trial court improperly expressed an opinion about the case in a manner that was detrimental to him, in violation of OCGA § 17-8-57. That statute provides that it is error for a judge to "express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

Before giving the jury its charge, after reading the indictment, the trial court commented that "[t]his is not the longest one that I've read, but it's right up there." It was apparently referring to the length of the indictment. Osterhout, however, neither objected nor moved for a mistrial after the trial judge made the statement. Thus, he has waived the issue on appeal. See *Keller v. State*, 208 Ga. App. 589, 590 (1) (431 SE2d 411) (1993).

Even if the issue was not waived, contrary to Osterhout's argument, we conclude that the judge's statement did not constitute a violation of the statute. The trial judge in this case did not comment on the evidence or the guilt of the defendant, but only on the length of the indictment.

4. Osterhout also asserts that his trial counsel was ineffective and enumerates several perceived deficiencies.

To prove ineffective assistance, Osterhout was required to show that counsel's performance was deficient and that this deficient performance prejudiced his defense. *Ellison v. State*, 242 Ga. App. 636, 638 (7) (530 SE2d 524) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The trial court's determination with respect to counsel's effectiveness will be upheld on appeal unless clearly erroneous. *Jackson v. State*, 209 Ga. App. 53, 56 (7) (432 SE2d 649) (1993).

(a) Osterhout first complains that counsel was ineffective in the manner he handled certain DNA evidence. He complains that it was error for trial counsel to stipulate that DNA evidence demonstrated that his semen was present in his wife's vagina and that his wife's DNA was found on some duct tape. He argues that counsel's actions deprived him of the opportunity to challenge the chain of custody and admissibility of this evidence.

At the motion for new trial hearing, trial counsel testified that he stipulated to the DNA evidence because he did not see the validity of challenging the semen in the wife's vagina because Osterhout had told him that "this was his wife and husbands and wives have sex," and that he remembered having sex with his wife. He also testified that it was part of his trial strategy to reduce the number of State's witnesses. By stipulating to this evidence, the GBI experts would not have to testify against his client. He also testified that he discussed the chain of custody with the State and was satisfied that the chain of custody could be established.

Failure to do what Osterhout now claims should have been done was a considered decision due to counsel's trial strategy and tactics, and not a result of inadequate preparation or presentation. *Sutton v. State*, 261 Ga. App. 860, 864 (2) (a) (583 SE2d 897) (2003). As a general rule, matters of reasonable tactics and strategy, "whether wise or

unwise, [do] not amount to ineffective assistance of counsel." (Punctuation omitted.) *Berry v. State*, 267 Ga. 476, 482 (4) (i) (480 SE2d 32) (1997). In light of the overwhelming evidence against Osterhout, he has failed to establish that the results of his proceeding would have been different if his lawyer had not stipulated as to the DNA evidence.

(b) Osterhout also claims that trial counsel was ineffective for failing to pursue the insanity defense. During the hearing on the motion for a new trial, trial counsel testified that Osterhout was evaluated at Central State Hospital and nothing in the report supported an insanity defense. He said that

> [a]s I recall, [Osterhout] was in Central State quite a while, living among psychologists, psychiatrists, sociologist, whatever their field is, then I had not seen anything to give me an idea that maybe we'd have a really good chance . . . to have him declared mentally incompetent or so insane that he's not responsible for his actions legally.

He testified that Osterhout never claimed that he was insane, only that he could not remember.

An insanity defense requires a showing that a defendant did not have the ability to distinguish between right and wrong at the time of the alleged crimes. *Bright v. State*, 265 Ga. 265, 273 (2) (e) (455 SE2d 37) (1995). Our review of the record discloses that the trial court ordered a mental evaluation of Osterhout on two occasions. The reports, however, are not included in the record. In the sentencing phase of the trial, the trial court stated that it had read the psychiatric evaluation both on Osterhout's competency to stand trial and competency at the time of the event. The court said, "According to the psychologist, [Osterhout] may have some borderline personality problems which are hard to treat." There is, however, no indication that Osterhout did not have the mental capacity to distinguish between right and wrong at the time the crimes were committed. Further, Osterhout presented no evidence at the new trial hearing regarding his mental capacity which would support the feasibility of an insanity defense.

"[I]t is not enough to show merely that counsel unreasonably failed to inquire into [the defendant's] mental state — he must show a likelihood that such an evaluation would have affected the outcome at trial." (Citation omitted.) *Barber v. State*, 236 Ga. App. 294, 298 (4) (512 SE2d 48) (1999). Osterhout has shown neither.

(c) Osterhout next argues that trial counsel was ineffective for failing to argue that evidence of his wife's prior sexual history was

admissible. Based on our holding in Division 1 that this evidence was excluded under the Rape Shield Statute, this enumeration is without merit.

(d) Osterhout's final claim of ineffective assistance of counsel relates to counsel's failure to object to the trial court's inclusion of the charge on simple assault after the charge conference at which it said the charge would not be given. He also claims as error trial counsel's oral request to charge on the simple assault.

OCGA § 5-5-24 (b) requires the judge to inform the parties as to his action on the charge requests prior to closing arguments, so as to allow the parties to argue their cases intelligently to the jury. See *Daniels v. State*, supra, 137 Ga. App. at 374. Osterhout argues that the failure to reargue the case after the court announced its intent to instruct the jury on simple assault "may well have caused the appellant to be found guilty of and sentenced for aggravated assault, instead of simple assault." Osterhout must show prejudice as well as deficiency. *Ellison v. State*, supra, 242 Ga. App. at 638 (7). Because the jury *did* find Osterhout guilty of simple assault on one of the aggravated assault charges, Osterhout has failed to show how the failure to object prejudiced his defense.

While it is true that absent a written request for a charge on a lesser included offense, made at or before the close of the evidence, the failure to so charge is not error, *State v. Stonaker*, 236 Ga. 1 (222 SE2d 354) (1976), the trial court subsequently gave Osterhout's requested charge on simple assault. Thus, Osterhout has failed to show that, but for trial counsel's failure to request such a charge in writing, the outcome of the trial would have been different.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 17, 2004.

*Adams & Ford, Francis N. Ford*, for appellant.
*Fredric D. Bright, District Attorney, Dawn M. Baskin, Shelley S. Tice, Assistant District Attorneys*, for appellee.