A92A0110. HILSON v. THE STATE.
(418 SE2d 784)

BEASLEY, Judge.

Hilson was convicted of aggravated assault, OCGA § 16-5-21 (a) (2), upon his wife.

His enumerations relate to the testimony of their eight-year-old son and to the basis for the court's ruling on the motion for new trial. The latter involves a consideration of the evidence, which is viewed favorably to the verdict. *Adams v. State*, 255 Ga. 356, 357 (338 SE2d 860) (1986).

Late one night, after defendant had been in the bathroom, he burst into their bedroom and accused his wife of having an affair. He began to choke her and knock her around. She began yelling and screaming. He obtained a wooden baseball bat and beat her legs with it. He later got furious, grabbed her, threw her on the floor, again accused her of having an affair, and hit her legs and thighs with the bat. He told her to put her clothes on and accompany him to the car, where he hit her in the face and eyes with his hands. They returned to the house and he hit her with the bat again, breaking the bone in her little finger. She lost consciousness. When she regained it, defendant was again hitting her with the bat. During this time, he was drinking.

After daylight, the victim asked defendant to take her to the hospital. Instead, he began cleaning up the blood from the two rooms. He later called his friend Godfrey to help him take her to the hospital.

Appellant instructed the victim to say that she had been accosted at a gas station by three men who abducted her and beat her up. She initially complied, but the police did not believe her, and she subsequently related the above. Although defendant told the same story to Godfrey, he later admitted to Godfrey that he and his wife had an argument and he had hit her.

Emergency medical personnel who took the victim to the hospital testified that they could tell by her appearance that they needed to get her to the hospital quickly. She was semi-conscious but not ambulatory. She had sustained extreme contusions to her head and other areas, as well as lacerations to her lower extremities. The swelling of her arms was so bad that they could not take her blood pressure. Appellant said he had discovered her in her car in that condition, but these witnesses testified that as they were leaving, appellant leaned over the victim furtively and stated, "Remember what [I] had told you and what we talked about."

The couple's eight-year-old child testified that on the night in question, defendant had come into his room, retrieved a baseball bat, and told him that he was going outside. He later heard the sound of the bat hitting on something, and he heard his mother screaming to stop. He heard his father say, "Were you with another man?"

1. Appellant contends that the court erred in permitting the child to testify without taking an oath.

After the prosecution called the child, appellant asked the court to briefly examine him "to determine whether or not he's capable to tell the truth and knows the difference between the truth and right and wrong and so on and so forth, that the Court examine him and satisfy itself that he is, in fact, competent to testify."

The prosecutor referred the court to OCGA § 24-9-5 (b). Subsection (a) states: "Except as provided in subsection (b) . . . , persons who do not have the use of reason, such as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, shall be incompetent witnesses." Subsection (b) provides: "Notwithstanding the provisions of subsection (a) . . . in all . . . criminal cases in which a child was . . . a victim of or a witness to any crime, any such child shall be competent to testify, and his credibility shall be determined as provided in Article 4 of this chapter."

The State argued that the child was presumed competent and could testify without taking an oath or understanding the concept of an oath. Appellant nonetheless requested a brief examination of the child, stating that OCGA § 24-9-5 does not specify the age at which a child is deemed competent to testify, as do statutes in other states, and "I believe the trial probably hinges on his testimony." The court responded: "It would probably be the safer thing to determine the competency of the child and the understanding of the child as to an

oath. But I understand that the state does not wish the Court to do that and wants to rely on the statute, and that's something the state has a right to do. It can defend itself on appeal. . . . So the child can apparently testify without any inquiry being made by the Court as to the competency of the child or the understanding by the child of an oath." Defendant excepted to that ruling.

The child was then called as a witness. In response to questioning by the State, the child stated that he knew what it meant to tell a lie; telling a lie was a bad thing and not a good thing; he could get in trouble for telling a lie; when you get in trouble you get a spanking and go to jail; he knew what it was to tell the truth; telling the truth was a good thing and not a bad thing; and he knew the difference between telling the truth and not telling the truth. He responded "yes" to the question: "When you promise this judge sitting up there in that black robe in that big black chair, and these members of the jury seated over there, do you promise to tell them the truth?" He then testified as to the incident on trial.

Appellant argues that notwithstanding the provisions of OCGA § 24-9-5 (b), a child witness must still be administered an oath pursuant to OCGA § 24-9-60, which provides: "The sanction of an oath or affirmation equivalent thereto shall be necessary to the reception of any oral evidence. . . ." OCGA § 17-8-52 sets forth the oath administered to witnesses in criminal cases.

" 'In this State an oath or affirmation is required of all witnesses, and unsworn statements are not treated as amounting to any evidence, except "in specified cases from necessity." ' [Cit.]" *Belcher v. State*, 173 Ga. App. 509 (1) (326 SE2d 857) (1985). OCGA § 24-9-5 (b) creates a rule of necessity authorizing the admission of the testimony of children who do not understand the nature of an oath in those cases specified in the Code section. *Bright v. State*, 197 Ga. App. 784 (3) (400 SE2d 18) (1990). But the necessity must first be established. When a party seeks to admit the testimony of a child, the court must examine the child in order to determine whether the child in fact possesses the requisite degree of intelligence so as to qualify the child as a competent witness capable of being administered an oath. See *Smith v. State*, 247 Ga. 511, 512 (277 SE2d 53) (1981): "[T]he standard of intelligence required to qualify a child as a witness is not that he be able to define the meaning of an oath, nor that he understand the process under which the oath is administered, but rather that he know and appreciate the fact that as a witness he assumes a solemn and binding obligation to tell the truth relative to the case and concerning such matters as he may be interrogated on, and that if he violates the obligation he is subject to be punished by the court. [Cit.]" If so, the child must be sworn.

In this case, the child witness, in response to questioning by the

State, demonstrated that he was aware that he was under an obligation to tell the truth and could be punished for not doing so. Although he was shown to be competent, he was not sworn. After the preliminary questioning by the State, appellant failed to request that the child be formally sworn and did not object to his testifying. "Where a party, without objection, allows a witness to testify against him without first being sworn . . . [the] failure to object constitute[s] a waiver of the requirements of an oath. [Cits.]" *Belcher*, supra at 510; *Chapman v. State*, 257 Ga. 19, 20 (3) (354 SE2d 149) (1987). Under these circumstances, we find no reversible error.

2. Appellant argues that insofar as OCGA § 24-9-5 exempts children from the requirement of an oath in criminal cases, it violates the equal protection clause (Art. I, Sec. I, Par. II) and due process clause (Art. I, Sec. I, Par. I) of the Georgia Constitution of 1983 and of the Fourteenth Amendment to the United States Constitution. Compare *Ambles v. State*, 259 Ga. 406, 407 (2) (383 SE2d 555) (1989) (rejecting challenges by the state to the constitutionality of OCGA § 24-9-5 prior to its 1989 amendment, on grounds that it discriminated against child victims deemed incompetent witnesses).

Appellant's challenge to the constitutionality of the statute was not timely; it was not asserted until he filed his motion for new trial. "Under repeated rulings of the court, the constitutional question, presented for the first time in the defendant's motion for new trial, was not timely raised so as to confer jurisdiction of the appeal upon the Supreme Court. [Cits.]" *Gainey v. State*, 232 Ga. 334 (206 SE2d 474) (1974). Thus the constitutional issues are not reviewable and the case is properly in this court.

3. Appellant next complains of the trial court's denial of that aspect of his motion for new trial predicated on the argument that the State failed to prove his guilt beyond a reasonable doubt. The form for a motion for new trial in OCGA § 5-5-42 (d) states the following grounds: "(1) The defendant should be acquitted and discharged due to the state's failure to prove guilt beyond a reasonable doubt. (2) Although the state proved the defendant's guilt beyond a reasonable doubt, the evidence was sufficiently close to warrant the trial judge to exercise his discretion to grant the defendant a retrial. (3) The court committed an error of law warranting a new trial." According to subsection (c), this form is sufficient but not exclusive.

Appellant's motion for new trial contained a verbatim recitation of the three grounds in the statute. The motion was later amended to add other grounds. In denying appellant's request for discharge and acquittal due to the State's failure to prove guilt beyond a reasonable doubt, the trial court perceived the second ground to be an admission that the state had proved guilt beyond a reasonable doubt. Appellant argues that under modern rules of alternative pleading, as well as the

circumstances of this case, the inconsistent grounds in his motion should not have been used as admissions against him. We agree.

However, the evidence, viewed in a light most favorable to the verdict, *Adams v. State*, supra, was sufficient to authorize a rational trier of fact in finding appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). For this reason, rather than for the one given by the court, there is no reversible error. See *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673) (1989).

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED MAY 7, 1992.

*Cowen & Cowen, Martin L. Cowen III*, for appellant.
*Robert E. Keller, District Attorney, Deborah C. Benefield, Assistant District Attorney*, for appellee.